```
             FILED
       U.S. DISTRICT COURT
     EASTERN DISTRICT OF LA

     2005 MAY 23  AM 11: 16

       LORETTA G. WHYTE
              CLERK
```

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUIS ANTHONY JAMES, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-0333** |
| **TERREBONNE PARISH CRIMINAL JUSTICE COMPLEX** | **SECTION "A"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b) and (c), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and(2)**. Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

### I.     Factual Summary

The plaintiff, Louis Anthony James, Sr. ("James"), is a prisoner housed in the Terrebonne Parish Criminal Justice Complex ("TPCJC") in Houma, Louisiana. James filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against the TPCJC and Warden Marcel "Joe" Null. James alleges that he is a Louisiana Department of Corrections ("DOC") inmate and he is being denied certain privileges he is entitled to as a DOC inmate.



James claims that, while housed in TPCJC, he is denied access to rehabilitation programs, educational opportunities, and religious services. James seeks access to the rehabilitation programs and educational opportunities or a transfer to a facility where he can receive these privileges.

## II. Standard of Review for Frivolousness

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).

However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint. Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiffs' claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III. <u>Improper Defendant</u>

James has named the TPCJC as a defendant in this matter. Section 1983 imposes liability on any "person" who violates someone's constitutional rights "under color of law." Title 42 U.S.C. § 1983; *see Will v. Mich. Dep't. of State Police*, 491 U.S. 58 (1989). Under federal law, a county (or parish) prison facility is not a "person" within the meaning of the statute. *Cullen v. DuPage County*, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw County Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982). Thus, the TPCJC is clearly not a proper defendant in this case.

In addition, a parish prison is not a proper defendant because it lacks capacity to sue or be sued as required by Rule 17(b) of the Federal Rules of Civil Procedure and state law. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24.

Although Louisiana courts have not ruled on the issue of whether a Parish jail is a juridical person that can sue or be sued, the Louisiana Supreme Court in *Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So. 2d 341 (La. 1994), set forth a framework within which to determine an entity's juridical status. The Court in *Roberts* stated:

> [t]he important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity. 1 Sands & Libonati,

3

§ 2.18 and authorities cited therein, §§ 2.19, 2.20. Such a determination will depend on an analysis of specifically what the entity is legally empowered to do. *Roberts*, 634 So. 2d at 346-47. In concluding that the Sewerage and Water Board was capable of being sued, the *Roberts* court focused its analysis on the independent management, financing, and operations of the Board. *See id.* at 352.

By contrast, in *City Council of Lafayette v. Bowen*, 649 So. 2d 611, 616 (La. App. 3d Cir. 1994), *writ denied*, 650 So. 2d 244 (La. 1995), the Louisiana Third Circuit Court of Appeal held that under the *Roberts* analysis, the City Council of Lafayette had no capacity to sue or be sued. In so holding, the court expressly found "no authority, constitutional, statutory, or via home rule charter that authorizes the Lafayette City Council to institute of its own motion, a lawsuit." *Id.* at 613.

Furthermore, Louisiana law divides the responsibility for its Parish jails. The Parish is charged with its jails' physical maintenance. La. Rev. Stat. Ann. § 15:702. However, the duty to administer and operate the jails falls on the Sheriff of each Parish. La. Rev. Stat. Ann. § 15:704. The office of sheriff is a constitutionally created office in Louisiana, existing separately from the Parish government. La. Const. art. 5 § 27; *see Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. App. 2d Cir. 1991) (holding that the parish could not be liable for injuries attributed to the sheriff).

Under the *Roberts* framework, the jail facilities are not "legally empowered to do" anything independently of either the respective Parish officials or the Parish Sheriff. *See Roberts*, 634 So. 2d at 347. The prison is not a separate entity, but merely a shared branch or facility of these greater entities.

Thus, a parish jail is "not an entity, but a building." *See Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998)(dismissing with prejudice the St. Tammany Parish Jail as

4

an improper defendant). Accordingly, James's claims against the TPCJC should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted.

### III.  DOC Privileges and Transfer

James complains that, while housed in TPCJC, he is denied access to rehabilitation programs, educational opportunities, and religious services. He requests that he either be given these privileges at TPCJC or be transferred from TPCJC to a facility where he can receive them. His claims and the request for transfer are frivolous for the following reasons.

### A.  Due Process Considerations

It is well settled that the Due Process Clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be "much more disagreeable" to the prisoner than in another. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

Louisiana Revised Statute §15:566(B) sets forth the exceptions under which prisoners convicted of state criminal offenses are to be sent to DOC facilities from parish jails.[1] Further, La.

---

[1] La. Rev. Stat. Ann. § 15:566(B) provides:

B. The sheriff or his duly qualified deputy, within thirty days of the date upon which sentence to imprisonment at hard labor has been imposed, shall deliver the prisoner to the state correctional institution designated by the Department of Corrections, unless:
(1) The governor shall have reprieved said prisoner; or
(2) The prisoner is retained in the parish pursuant to R.S. § 15:824(B) or R.S. § 15:832; or
(3) The prisoner has been admitted to post-conviction bail; or
(4) The prisoner has obtained an order of appeal and the secretary of the Department of Corrections agrees to take custody of the prisoner. In other cases in which an order of appeal is obtained, the sheriff shall deliver the prisoner to the department within fifteen days of the date upon which the

5

Rev. Stat. Ann. § 15:824, authorizes the Director of Corrections to decide which penal institution an inmate should be delivered or transferred.[2] The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners. *See Santos v. La. Dept. of Corr. Secretary*, 1996 WL 89260 at *4 (E.D. La. Feb. 28, 1996) (La. Rev. Stat. Ann. § 15:824(A), (B) does not give DOC prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4 Cir. 1994).

Thus, the State of Louisiana, by its broad discretionary statutes, has not created a protected liberty interest in being housed in a particular prison or being transferred from TPCJC to a DOC facility. *Santos*, 1996 WL 89260 at *4. Therefore, James's claim that he is entitled to a transfer

---

highest court of the state to which the prisoner may appeal as of right has affirmed the conviction and sentence. If the prisoner has filed a timely application for rehearing, the sheriff shall deliver the prisoner within fifteen days of the date upon which the rehearing is denied. Application for writs of certiorari or review to the state supreme court shall not prevent transfer under the provisions of this Subparagraph; or
(5) The court, for good cause, stays for a specified period a transfer to the Department of Corrections pursuant to Paragraph (4) above.

[2]La. Rev. Stat. Ann. §15:824(A) and (B) provide in pertinent part:

A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. § 15:1062.
B. (1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department. . . .

from TPCJC to a DOC facility is frivolous and otherwise fails to state a claim for which relief can be granted.

### B. Equal Protection Considerations

James also contends under a broad reading that he is a DOC prisoner in a parish prison and is treated differently than a DOC inmate housed in a DOC facility. He contends that as an inmate in the physical custody of Terrebonne Parish, he is not able to participate in educational, rehabilitation, and religious services that would be available in other prisons.

However, neither prisoners nor indigents constitute a suspect class for purposes of the Equal Protection Clause of the Fourteenth Amendment. *See Harris v. McRae*, 448 U.S. 297, 323 (1980); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997). Therefore, James's claims are viable only if the unavailability of educational opportunities, rehabilitation programs, and religious services in and of itself violates the Constitution.

### C. Educational Opportunities and Rehabilitation Programs

James concedes in his complaint that TPCJC does not offer educational opportunities or rehabilitation programs for inmates. A prisoner has no constitutional right to participate in educational or rehabilitation programs where no such programs exist where he is housed. *Beck v. Lynaugh*, 842 F.2d 759 (5th Cir. 1988); *Newman v. Alabama*, 559 F.2d 283 (5th Cir. 1977), *rev'd in part on other grounds, sub nom, Alabama v. Pugh*, 438 U.S. 781 (1978); *Burnette v. Phelps*, 621 F. Supp. 1157, 1159 (M.D. La. 1985). In addition, there is no federal constitutional right for a prisoner to expect to participate in a prison educational or rehabilitation program. *See Burnette*, 621 F. Supp. at 1159 (quoting *Newman*, 559 F.2d at 292). Therefore, this claim is also based on a

meritless legal theory and should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted.

### D. Church Services

James also complains about his inability to attend church services. He does not set forth any allegations regarding his particular faith and does not allege that he has been prevented from exercising his religious beliefs other than attendance at formal services.

In general, while "[i]nmates clearly retain protections afforded by the First Amendment, . . . "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the Considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Thus, the First Amendment rights of prisoners are necessarily more restrictive than the First Amendment rights of persons who are not incarcerated. Specifically, courts must "afford appropriate deference to prison officials" in that prison regulations or practices "alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* at 349. Even if a prison practice or regulation impinges on inmates' constitutional rights, it is nevertheless "valid if it is reasonably related to legitimate penological interests." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)). Thus, "[t]he Constitution requires (only) that 'reasonable opportunities must be afforded to all prisoners to exercise . . . religious freedom.'" *Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972) (emphasis added)).

In the instant case, James alleges that he is denied his right to attend church services while housed in the TPCJC. He also indicates that he sent out a request and filed the first step of the grievance process for educational privileges. He alleges that the response received from the prison

8

officials indicated that educational privileges were restricted for security reasons due to a lack of officers to escort teachers. James does not indicate any effort to pursue administrative resolution of his alleged denial of access to religious services.

Section 1997e as amended by the Prison Litigation Reform Act of 1996 ("PLRA") provides as follows:

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C. § 1997e(a). An inmate is required to exhaust administrative remedies prior to instituting suit in federal court without regard for the type of relief he is seeking or the type of relief available under the prison's grievance system. *Booth v. Churner*, 532 U.S. 731, 739 (2001). Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory in cases alleging all aspects of prison life. *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983, 988, 992 (2002) (citing *Booth*, 532 U.S. at 739). "Dismissal under §1997e is made on pleadings without proof." *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (quoting *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)).

Therefore, for the foregoing reasons, James's claims that he is denied access to religious services at TPCJC should be dismissed for failure to exhaust.

### IV. Recommendation

It is therefore **RECOMMENDED** that the plaintiff, Louis Anthony James, Sr.'s § 1983 claims against the Terrebonne Parish Criminal Justice Complex be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which can be granted under Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that James's § 1983 claims against Warden Null seeking transfer to a DOC facility and for denial of access to rehabilitation programs and educational opportunities be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which can be granted under Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that James's § 1983 claims against Warden Null for denial of access to religious services be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust the available administrative remedies under Title 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 23rd day of May, 2005.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE